Ernest F. ALBIERO, Plaintiff–Appellant,

v.

CITY OF KANKAKEE, et al.,
Defendants–Appellees.

No. 96–3381.

United States Court of Appeals,
Seventh Circuit.

Submitted July 25, 1997.

Decided Aug. 18, 1997.

Ernest F. Albiero (submitted on briefs), Big Rock, IL, for Plaintiff–Appellant.

Nancy G. Lischer, Hinshaw & Culbertson, Chicago, IL, J. Marc Forkins, Hinshaw & Culbertson, Lisle, IL, Ken Torricelli, Hinshaw & Culbertson, Champaign, IL, for Defendants–Appellees.

Before POSNER, Chief Judge, and EASTERBROOK and MANION, Circuit Judges.

EASTERBROOK, Circuit Judge.

Whether we have jurisdiction to decide this appeal depends on the answer to a question reserved in *Otis v. Chicago*, 29 F.3d 1159 (7th Cir.1994) (en banc). The district court dismissed Ernest Albiero's complaint with prejudice but wrote that he had 21 days to file a new complaint limited to an equal protection theory the judge detected in the original. The court did not enter a judgment under Rule 58. Instead of waiting for a final judgment, Albiero filed a notice of appeal on the 15th day. Defendants recognized the potential jurisdictional problem and asked the judge to fix things by entering a proper judgment; the judge declined, leaving matters for us to sort out.

An order dismissing a complaint, but not ending the case, is not a final decision and therefore may not be appealed. *Perry R. Pennington Co. v. T.R. Miller Co.*, 994 F.2d 390 (7th Cir.1993). The judge gave Albiero an opportunity to resuscitate his case by filing a new complaint, which Albiero did not. *Otis* holds that Albiero could have appealed any time after the 21st day despite the lack of a proper judgment. Is Albiero's actual notice of appeal, filed earlier, effective? Three things have interacted to present this problem. First is Albiero's impetuous appeal. Had he waited another week—or told the judge that he would not use the option and asked for immediate entry of a final judgment—the problem would not have arisen. Second is the judge's refusal to enter a final judgment despite defendants' request. The judge evidently thought that the notice of appeal prevented him from acting, but a notice of appeal "divests the district court of its control over [only] those aspects of the case involved in the appeal." *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58, 103 S.Ct. 400, 401, 74 L.Ed.2d 225 (1982). A district court may wrap up unfinished business—awarding costs and attorneys' fees, for example, and if necessary entering the final judgment when a notice of appeal is premature. See *Apostol v. Gallion*, 870 F.2d 1335, 1337–38 (7th Cir.1989). Two provisions of the federal rules contemplate entry of judgment following a premature notice of appeal. See Fed. R.App. P. 4(a)(2), (4). These rules won't work if district judges treat the notice of appeal as a reason to put the case file aside. The district judge could and should have entered a proper Rule 58 judgment, from which Albiero could have taken a proper appeal.

A third contributing factor is the district court's decision to dismiss the complaint "with prejudice" while simultaneously granting leave to file a new pleading. This is not a dismissal with "prejudice" in any ordinary sense; it appears to have been a docket-clearing step of the kind *Otis* deprecated—action that may make the district court's backlog look shorter, and improve reported figures for timely decision, but that does not end the case and therefore sows a procedural minefield. See also *Ford v. Neese*, 119 F.3d 560, 562 (7th Cir. 1997). The portion of the complaint that the judge dismissed "with prejudice" yet with leave to plead over as-

serted that the City of Kankakee violated Albiero's constitutional rights by refusing to issue a building permit that he needed to renovate two apartment buildings. The City asserts that the land is not zoned for the kind of use to which the renovated parcels would be put. The district judge wrote that blocking construction might violate the equal protection clause, though not the due process clause, but that the complaint must be tossed out because it does not "allege facts sufficient to support an equal protection claim."

■ A pair of misconceptions led to this decision. One is that a complaint must set out, and that its validity depends on, a legal theory, such as "due process" or "equal protection." That is not so: matching facts to a legal theory was an aspect of code pleading interred in 1938 with the adoption of the Rules of Civil Procedure. See *Bartholet v. Reishauer A.G. (Zurich)*, 953 F.2d 1073, 1077–78 (7th Cir.1992). A complaint must narrate a *claim*, which means a grievance such as "the City violated my rights by preventing me from renovating my apartments." Having specified the wrong done to him, a plaintiff may substitute one legal theory for another without altering the complaint. The other misconception is that a complaint must allege all of the facts essential to recovery under the plaintiff's legal theory. Some states, including Illinois, use fact pleading to this day, but federal courts took a different path 59 years ago. A complaint may not be dismissed unless it is impossible to prevail "under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984); see also, e.g., *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957); *American Nurses' Ass'n v. Illinois*, 783 F.2d 716, 727 (7th Cir.1986). That is why we have held that a plaintiff may supplement the complaint with factual narration in an affidavit or brief. E.g., *Early v. Bankers Life & Casualty Co.*, 959 F.2d 75, 79 (7th Cir.1992); *Orthmann v. Apple River Campground, Inc.*, 757 F.2d 909, 914–15 (7th Cir.1985). If the extra assertions make out a claim, then the complaint stands. Plaintiffs' memorandum opposing defendants' motion to dismiss contained assertions that led the judge to spot a potential equal protection theory. Given *Conley* and its successors, the judge should have accepted those statements and moved forward; dismissing the complaint with leave to replead extra facts was inconsistent with the federal rules and set the stage for the jurisdictional problem we now confront.

■ *Otis* holds that when a judge dismisses a suit, but gives the plaintiff time to fix the problem that led to dismissal, the order becomes a "final *decision*"—and so may be appealed under 28 U.S.C. § 1291—once the time for correction has expired, whether or not the court enters a final *judgment*. We reserved for future decision the question whether a notice of appeal may be filed earlier:

> We need not decide whether a party may appeal before the running of the time on the theory (as in *The Three Friends*) that a notice of appeal is tantamount to a declaration that the condition will never be satisfied, making the order "final" forthwith. Litigants, especially those without the aid of counsel, may be confused about the right means to secure appellate review, and deeming the notice of appeal a waiver of the opportunity to satisfy the condition may cause them to forfeit valuable entitlements.

29 F.3d at 1168. The reference in this passage is to *The Three Friends*, 166 U.S. 1, 17 S.Ct. 495, 41 L.Ed. 897 (1897), an admiralty case in which the district court entered an order specifying that the libel was to stand dismissed unless amended within 10 days. Without waiting for the entry of a final judgment (or even the expiration of the 10 days), plaintiff appealed. Addressing the argument that the lack of either amendment or judgment made the decision nonappealable, the Court replied that the appeal itself "was an election to waive the right to amend and the decree of dismissal took effect immediately." 166 U.S. at 49, 17 S.Ct. at 497. *The Three Friends* long predates Fed.R.Civ.P. 58, which requires the district court to enter final judgment on a separate document; it also predates the provisions of Fed. R.App. P. 4 that control what happens to an appeal filed while

the judgment is open to change in the district court. Is its approach still applicable?

Current rules make it impossible to carry forward the rationale of *The Three Friends.* Litigants no longer "elect" when the decision takes effect. Civil Rule 58 specifies how, by whom, and when, a final judgment will be entered. Notices of appeal do not play any role in its operation. Appellate Rule 4(a) makes it clear that a prejudgment notice of appeal does not halt proceedings in the district court and make "final" whatever has been accomplished so far, or surrender an opportunity to persuade the district judge to reconsider; to the contrary, a premature notice of appeal is suspended while the district court finishes the matters at hand. But Fed. R.App. P. 4(a)(2)—"A notice of appeal filed after the court announces a decision or order but before the entry of the judgment or order is treated as filed on the date of and after the entry."—offers a way to understand the effect of Albiero's notice of appeal. The district judge announced that the complaint was dismissed, and that the suit would be over unless Albiero filed a new complaint within 21 days. In other words, the judge stated a plan to enter a final judgment on day 22 unless Albiero filed a particular document. The notice of appeal filed on day 15 then should have been treated as filed on day 22. Rule 4(a)(2) does not quite capture what happened, because the district judge did not carry through with his plan. When day 22 arrived, the court did not enter a judgment, and it has not done so since. But under *Otis* and its precursor *Bankers Trust Co. v. Mallis,* 435 U.S. 381, 98 S.Ct. 1117, 55 L.Ed.2d 357 (1978), a judgment is not essential to appeal—for if it were, a district court could prevent appellate review of its decisions. We wrote that " 'entry' [of judgment] should be deemed to occur on the date the condition is satisfied or the time to satisfy it ends." *Otis,* 29 F.3d at 1167. Albiero's notice of appeal therefore places the case before us for decision.

■ Albiero believes that the Constitution of the United States entitles him to renovate the two apartment buildings he owns. Kankakee placed several obstacles in his path: (i) a zoning code, (ii) a construc-

tion-permit requirement (Albiero could not get one, not only because of the zoning problem but also because the City believes that he owes money for sewer charges, and it uses the permit requirement as a collection device), and (iii) a stop-work order issued to Albiero's contractor given the lack of a construction permit. Albiero's brief in this court does not contend that he lacked opportunities to challenge the City's decisions; indeed, he appears to be embroiled with the City not only in administrative hearings but also in state-court litigation. Cf. *Easter House v. Felder,* 910 F.2d 1387 (7th Cir.1990) (en banc). His principal contention is that Kankakee's zoning and building codes violate state law and deprive him of "substantive due process." Whether the City has followed state law is neither here nor there; the due process clause is not a means to enforce state law. See *Archie v. Racine,* 847 F.2d 1211, 1215–18 (7th Cir.1988) (en banc). And, as we have had all too many occasions to observe, "[f]ederal courts are not boards of zoning appeals." *River Park, Inc. v. Highland Park,* 23 F.3d 164, 165 (7th Cir.1994).

■ As for the equal protection clause: all Albiero has to say is that the defendants engaged in a "conspiracy" against him. What this has to do with equal protection of the laws is a mystery. A municipality acts only through agents, and that these agents have agreed (= "conspired") on a course of action does not present a constitutional problem. Cf. *Travis v. Gary Community Mental Health Center, Inc.,* 921 F.2d 108 (7th Cir. 1990). Albiero does not contend that he was singled out because of his race or some other improper attribute; nor does he contend, after the fashion of the plaintiff in *Esmail v. Macrane,* 53 F.3d 176 (7th Cir.1995), that he has been treated differently from other landlords because he is a political opponent of the mayor. His brief does not suggest that other, politically-favored owners have been allowed to ignore the zoning code or make improvements without paying their sewer charges. In the end, then, the district judge was too generous in telling Albiero that he could file another complaint; the document

he filed flunked even the lax standards of notice pleading under the federal rules.

AFFIRMED.